UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:13-CR-52 JD |
| | ) | 3:15-CV-402 |
| ISRAEL GARCIA | ) | |

**OPINION AND ORDER**

Defendant Israel Garcia was convicted for possessing cocaine with the intent to distribute it. He qualified as a career offender under the Sentencing Guidelines based in part on a previous conviction for voluntary manslaughter, leading to an advisory sentencing range of 151 to 188 months. The Court departed and varied downward from that range and imposed a sentence of 92 months of imprisonment. Mr. Garcia has now filed a motion to vacate his sentence under 28 U.S.C. § 2255. He argues that under the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015), his voluntary manslaughter conviction does not qualify as a crime of violence, so the application of the career offender guideline makes his sentence unlawful. That motion has been fully briefed. Mr. Garcia has also moved to stay consideration of his motion pending the Supreme Court's anticipated decision in *Beckles v. United States*. For the following reasons, the Court denies the motion to stay, and denies the motion under § 2255.

**I. FACTUAL BACKGROUND**

Israel Garcia was under investigation by law enforcement for dealing cocaine. On April 9, 2013, officers initiated a traffic stop of a car Mr. Garcia was driving. Mr. Garcia pulled into the parking lot of a convenience store, got out of his car, and fled through the store and into a church parking lot. With officers in pursuit, he approached an occupied church van, opened the door and grabbed the driver's arm, and yelled at him to get out of the car. The pursuing officers had their firearms drawn and ordered Mr. Garcia to stop, at which point Mr. Garcia said they

would have to shoot him. A struggle then ensued before officers were able to place Mr. Garcia in handcuffs. When officers returned to Mr. Garcia's car, they found 108 grams of cocaine. Mr. Garcia later admitted the cocaine was his and that he had been selling cocaine for several years.

On May 8, 2013, a federal grand jury indicted Mr. Garcia on one count of knowingly and intentionally possessing cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). Mr. Garcia subsequently plead guilty pursuant to a written plea agreement. In that agreement, Mr. Garcia agreed, among other things, not "to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including . . . any post-conviction proceeding, including but not limited to, a proceeding under Tile 28, United States Code, Section 2255." [DE 31 p. 4]. At the change of plea hearing, and again at the sentencing hearing, the Court confirmed that Mr. Garcia understood that agreement.

At sentencing, Mr. Garcia's advisory sentencing range under the Guidelines was determined by the career offender guideline, § 4B1.1. Mr. Garcia qualified for that guideline based on a previous federal conviction for possessing cocaine with intent to distribute—a "controlled substance offense," § 4B1.2(b)—and a conviction under Indiana law for voluntary manslaughter—a "crime of violence," § 4B1.2(a). Accordingly, Mr. Garcia's total offense level after acceptance of responsibility was 29, and his criminal history category was VI, producing an advisory sentencing range of 151 to 188 months of imprisonment. Prior to applying the career offender guideline, Mr. Garcia's base offense level under § 2D1.1 was 18.[1] With a two-level enhancement for reckless endangerment during flight, § 3C1.2, and a three-level reduction for

---

[1] As the Court noted at sentencing, this base offense level understated the seriousness of Mr. Garcia's offense, as he had admitted to selling cocaine for several years, yet his base offense level was determined based only on the amount of drugs he possessed at the time of his arrest.

acceptance of responsibility, § 3E1.1, Mr. Garcia's total offense level would have been 17. With seven criminal history points, Mr. Garcia would have been in criminal history category IV, which would have produced an advisory sentencing range of 37 to 46 months of imprisonment.

After calculating the guideline range, the Court granted a downward departure. Finally, in considering the factors under 18 U.S.C. § 3553(a), the Court carefully considered Mr. Garcia's arguments in mitigation, the foremost of which was that the range produced by the career offender guideline was excessive under the circumstances and failed to account for Mr. Garcia's personal characteristics. The Court agreed in part, based largely on the age of Mr. Garcia's predicate convictions and the fact that he committed the voluntary manslaughter offense when he was only sixteen years old. Mr. Garcia also expressed a commitment to turning his life around and to serving his community, and the Court deemed his remarks to be sincere. The Court also found, though, that the circumstances of Mr. Garcia's offense in this case were aggravating and that he had an exceptionally serious criminal history. Accordingly, based on its evaluation of the § 3553(a) factors as a whole, the Court varied downward from the advisory sentencing range by two offense levels and imposed a sentence of 92 months of imprisonment.

Consistent with his plea agreement, Mr. Garcia did not appeal. However, the Supreme Court subsequently held in *Johnson v. United States*, 135 S. Ct. 2551 (2015) that the residual clause of the Armed Career Criminal Act was unconstitutionally vague, in violation of the Due Process Clause. Mr. Garcia then filed a motion to vacate his sentence under 28 U.S.C. § 2255, arguing that voluntary manslaughter is not a crime of violence after *Johnson*, so his career-offender designation was improper. Counsel has since appeared on Mr. Garcia's behalf, and his motion has been fully briefed.

## II.  STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004).  Further, a "Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Bousley v. United States*, 523 U.S. 614, 621 (1998) (stating that habeas review "will not be allowed to do service for an appeal"). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

## III.  DISCUSSION

Mr. Garcia moves to vacate his sentence as unlawful in light of *Johnson*. He argues that *Johnson's* holding invalidating the residual clause of the Armed Career Criminal Act applies equally to the residual clause of the career offender guideline. He further argues that without the residual clause, his conviction for voluntary manslaughter no longer qualifies as a crime of violence, meaning he would no longer meet the criteria for the career offender guideline. Thus, he asserts that the increased guideline range makes his sentence unlawful and entitles him to collateral relief. In response, the government argues that Mr. Garcia waived his right to seek

4

collateral relief in his plea agreement; that voluntary manslaughter is a crime of violence even if *Johnson* applies to the Guidelines;[2] and that Mr. Garcia's sentence was within the statutory limits and that *Johnson* is not retroactive as applied to the Guidelines, so Mr. Garcia is not entitled to collateral relief. The Court considers the first two of those arguments in turn and finds that they require the denial of Mr. Garcia's motion. First, however, the Court addresses Mr. Garcia's motion to stay.

**A.  Motion to Stay**

Mr. Garcia has moved to stay consideration of his motion in light of the Supreme Court's granting of certiorari in *Beckles v. United States*, No. 15-8544, 2016 WL 1029080 (June 27, 2016). The petition for a writ of certiorari in *Beckles* presented three questions: (1) whether *Johnson's* constitutional rule applies to the Guidelines; (2) whether *Johnson* applies retroactively on collateral review to sentences enhanced under the residual clause of the Guidelines; and (3) whether an offense enumerated only in the application notes to the career offender guideline can be a crime of violence if the residual clause in the text of the guideline is invalidated. Petition for Writ of Certiorari, *Beckles v. United States*, No. 15-8544 (Mar. 9, 2016). Mr. Garcia argues that the Supreme Court's anticipated resolution of those questions will directly impact the resolution of his motion, so he asks that the Court stay its ruling pending the Supreme Court's decision.

Mr. Garcia is correct that the Supreme Court's decision in *Beckles* could affect the merits of his motion, as if the Supreme Court resolves any of those three questions against him, his

---

[2] The government actually focuses on the fact that manslaughter is enumerated as a crime of violence in the application notes to the career offender guideline. § 4B1.2 n.1. Because the Court finds that voluntary manslaughter is a crime of violence under the force clause, § 4B1.2(a)(1), it need not consider whether the offenses enumerated only in the application notes would survive *Johnson's* application to the Guidelines.

5

motion under § 2255 would fail. However, even if the Supreme Court resolves those issues entirely in his favor, Mr. Garcia's motion would still fail for two additional reasons. As discussed below, Mr. Garcia's voluntary manslaughter conviction is a crime of violence under the force clause of the Guidelines, which is unaffected by *Johnson*, so his designation as a career offender was proper. And even if Mr. Garcia could succeed on the merits, he waived his right to bring such a claim in his plea agreement. The Court can therefore resolve Mr. Garcia's motion on those grounds without addressing any issues that may be implicated by *Beckles*, so a stay is unwarranted.

**B.     Waiver of Post-Conviction Proceedings**

The government first argues that Mr. Garcia's petition is barred by the waiver of post-conviction proceedings in his plea agreement. "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). "It is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013). The only exceptions the Seventh Circuit has recognized to this rule are where "the plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of the plea agreement.'" *Keller*, 657 F.3d at 681 (quoting *Jones v. United States*, 167 F.3d 1142, 1144–45) (7th Cir. 1999) (internal alteration omitted).

Here, Mr. Garcia's plea agreement contained the following provision:

I expressly waive my right to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section

6

> 3742, or *any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255*[.]

[DE 31 p. 4 (emphasis added)]. The terms of that provision plainly encompass the present motion, in which Mr. Garcia seeks to contest his sentence in a post-conviction proceeding under § 2255. The colloquy at the change of plea hearing confirms that Mr. Garcia entered this agreement knowingly and voluntarily, and Mr. Garcia does not now suggest otherwise. Mr. Garcia nonetheless offers three reasons why he should not be bound by his agreement not to file this motion: that enforcing the waiver would constitute a miscarriage of justice; that the Court relied on a constitutionally impermissible factor; and that there was no meeting of the minds as to the scope of the waiver because he could not have foreseen this development in the law. The Court considers each in turn.

Mr. Garcia first argues that the Court should not enforce the waiver because doing so would constitute a miscarriage of justice, since the career offender designation greatly increased his advisory guideline range. In support, he relies primarily on *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011). In that case, the Seventh Circuit held that a challenge to the Guidelines under *Begay* and *Chambers*—statutory interpretation cases that narrowed the scope of the residual clause—was cognizable on collateral review. In reaching that holding, the court found that the misapplication of the career offender guideline was a miscarriage of justice as to sentences imposed when the Guidelines were mandatory. Mr. Garcia then notes that other circuits have recognized a miscarriage of justice as an exception to the enforceability of appeal waivers. He thus argues that his waiver should not be enforced because not allowing him to challenge his career offender designation would result in a miscarriage of justice.

This argument is unavailing. The Seventh Circuit has strictly circumscribed the exceptions that can be invoked to appeal waivers, and has never recognized a generalized

7

miscarriage-of-justice exception. *United States v. Smith*, 759 F.3d 702, 706 (7th Cir. 2014) (identifying ineffective assistance of counsel in negotiating the plea agreement, sentences that exceed the statutory maximum, and sentences that were the product of an impermissible factor, such as race, as "the only sorts of grounds which we have indicated may be sufficient to overcome a broad appellate waiver"). Mr. Garcia essentially argues that because the career offender guideline can have such a significant effect on a defendant's sentencing range, its misapplication constitutes a miscarriage of justice. Yet, the Seventh Circuit has often enforced appeal waivers against challenges to career-offender designations. *E.g.*, *id.* at 707 ("Smith may think that the court committed a mistake in classifying him as a career offender, but we have held that appeal waivers preclude appellate review even of errors that are plain in retrospect."); *United States v. Madgett*, 403 F. App'x 97, 98 (7th Cir. 2010) (holding that an appeal waiver barred a challenge to a career offender designation even where neither the defendant nor the government anticipated that the defendant would qualify as a career offender); *United States v. McGraw*, 571 F.3d 624, 631 (7th Cir. 2009) (holding that an appeal waiver barred a challenge to a career offender designation even though that guideline raised the defendant's guideline range from 92–115 months to 262–327 months); *United States v. Hughley*, 149 F. App'x 521, 522 (7th Cir. 2005) (holding that an appeal waiver barred the defendant's challenge to the career offender guideline); *United States v. Standiford*, 148 F.3d 864, 867–70 (7th Cir. 1998) (enforcing an appeal waiver against a proposed challenge to the defendant's career offender designation, in a pre-*Booker* case). Thus, the Seventh Circuit does not view the magnitude of a potential claim's impact on a guideline range as sufficient to excuse a defendant from a waiver. *See Smith*, 759 F.3d at 707 ("The point of an appeal waiver, after all, is to prospectively surrender one's right to appeal, no matter how obvious or compelling the basis for an appeal may later turn out to be.").

Mr. Garcia's reliance on *Narvaez* is misplaced, too, as the Seventh Circuit has since held that even an erroneous career-offender designation is not a miscarriage of justice for sentences imposed when the Guidelines were advisory, as was Mr. Garcia's. *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013). In *Hawkins*, the court noted that when the Guidelines were mandatory, as in *Narvaez*, they were the "practical equivalent of a statute," meaning a miscalculated guideline range would result in a sentence the court was not otherwise authorized to impose. *Id.* at 822. After *Booker*, though, "[n]ot only do the guidelines no longer bind the sentencing judge; the judge may not even *presume* that a sentence within the applicable guidelines range would be proper." *Id.* Rather, the judge must determine whether a sentence in the range recommended by the Guidelines "is consistent with the sentencing considerations set forth in 18 U.S.C. § 3553(a), and if he finds it is not he may not impose it even though it is within the applicable guidelines range." *Id.* Thus, the court held that misapplying the career offender guideline when the Guidelines are advisory could not be considered a "miscarriage of justice" that can be collaterally attacked. *Id.* at 823–25.

Mr. Garcia argues that *Narvaez* and not *Hawkins* governs here because he is raising a constitutional claim, not merely a statutory interpretation claim. He offers no basis for attaching meaning to that distinction, though, as even *Narvaez* only involved a statutory interpretation claim. In addition, the Seventh Circuit has enforced appeal waivers against constitutional challenges to the Guidelines under the Ex Post Facto Clause, even when the impact on the guideline range was substantial. *United States v. Hallahan*, 756 F.3d 962, 971–76 (7th Cir. 2014); *United States v. Vela*, 740 F.3d 1150, 1154 (7th Cir. 2014). Mr. Garcia has not identified any reason why the Due Process Clause should be treated differently. Therefore, the Court finds that Mr. Garcia is not excused from his appeal waiver due to a miscarriage of justice.

Next, Mr. Garcia attempts to invoke the exception for sentences "based on 'constitutionally impermissible criteria, such as race.'" *United States v. Adkins*, 743 F.3d 176, 192 (7th Cir. 2014) (quoting *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005)). He argues that the residual clause of the career offender guideline violates the Due Process Clause of the Constitution, so relying on a guideline range affected by the residual clause is relying on "constitutionally impermissible criteria." The Seventh Circuit has never construed this exception in that manner, though. The Seventh Circuit has typically given the examples of race or gender as the types of criteria that permit this exception. *Bownes*, 405 F.3d at 637; *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir. 1997); *see also United States v. Trujillo-Castillon*, 692 F.3d 575, 579 (7th Cir. 2012) (holding that a sentencing court may not consider characteristics such as a defendant's "race, sex, national origin, creed, religion, and socio-economic status"). The career offender guideline, even if improperly applied, does not resemble those protected characteristics. Nor has Mr. Garcia cited any case in which the Seventh Circuit has applied this exception to a substantive error in calculating the guideline range. To the contrary, as noted above, the Seventh Circuit has held that even Guidelines challenges of constitutional origin were barred by waivers. *See Vela*, 740 F.3d at 1154 (enforcing an appeal waiver to bar an argument under *Peugh v. United States*, 133 S. Ct. 2072 (2013), which applied the Ex Post Facto Clause to the Guidelines); *Hallahan*, 756 F.3d at 971–76 (same); *see also United States v. Lockwood*, 416 F.3d 604, 607–08 (7th Cir. 2005) (holding that an appeal waiver barred a challenge under *Booker*, which held that treating the Guidelines as mandatory violates the Sixth Amendment). Thus, this exception is not available to Mr. Garcia.

Finally, Mr. Garcia argues that the waiver should not be enforced because *Johnson* represented a "sea change" in the law that neither he nor the government could have foreseen, so

there could not have been a meeting of the minds that Mr. Garcia was waiving this type of claim. However, the Seventh Circuit has repeatedly and emphatically rejected that argument, and counsel is remiss for not acknowledging the binding precedent that forecloses this argument. As the Seventh Circuit explained in *Bownes*:

> In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect.

405 F.3d at 636. The court also noted "abundant case law that appeal waivers . . . are effective even if the law changes in favor of the defendant after sentencing," and held that this principle applies even to "unforeseen legal changes" that bring about "a 'sea change' in the law." *Id.*; *see also Vela*, 740 F.3d at 1152–54; *United States v. McGraw*, 571 F.3d 624, 631 (7th Cir. 2009) ("We have consistently rejected arguments that an appeal waiver is invalid because the defendant did not anticipate subsequent legal developments."); *Lockwood*, 416 F.3d at 608 ("The fact that [the defendant], the government, and the district court failed to anticipate *Booker* or its sweeping effect on federal guidelines sentencing does not change" the enforceability of an appeal waiver.). Therefore, having waived his right to contest his conviction "on any ground," Mr. Garcia's failure to anticipate the particular ground he wants to raise now does not undermine the enforceability of his waiver. *Lockwood*, 416 F.3d at 608 (enforcing an appeal waiver where the defendant "waived his right to appeal his sentence for *any reason*," noting that "'[a]ny reason' captures a great deal, including later changes in law that might favor" the defendant).

For each of those reasons, the Court finds that the waiver in Mr. Garcia's plea agreement is valid; that his present motion falls within the scope of that waiver; and that no exception to the enforceability of the waiver applies. Accordingly, Mr. Garcia's motion is barred by his

11

agreement not to challenge his sentence in any post-conviction proceedings, so his motion must be denied.

## C. Crime of Violence

Finally, the Court finds that Mr. Garcia's conviction for voluntary manslaughter constitutes a crime of violence under the force clause of the Guidelines, which was not implicated by *Johnson*, so he properly qualifies as a career offender even if *Johnson* applies to the Guidelines. Section 4B1.2(a) of the Guidelines defines "crime of violence" as a felony offense that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (emphasis added). The italicized portion of that definition, known as the residual clause, is the portion that the Supreme Court struck from the Armed Career Criminal Act in *Johnson*. *Johnson* had no effect on the first prong of that definition, though. Thus, Mr. Garcia's voluntary manslaughter conviction will still qualify as a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1).

Indiana law defines voluntary manslaughter as "knowingly or intentionally . . . kill[ing] another human being . . . while acting under sudden heat." Ind. Code § 35-42-1-3(a).[3] As subsection (b) of that statute explains, the only difference between voluntary manslaughter and murder under Indiana law is the "existence of sudden heat." *Id.* § 35-42-1-3(b). The Seventh

---

[3] The statute has been amended since Mr. Garcia's offense, but the definition of the offense has not changed.

Circuit has repeatedly held that a conviction for intentionally causing bodily harm "unambiguously requires proving physical force." *United States v. Upton*, 512 F.3d 394, 404 (7th Cir. 2008), *overruled on other grounds by United States v. Miller*, 721 F.3d 435, 443 (7th Cir. 2013); *see also, e.g.*, *United States v. Waters*, No. 15-2728, 2016 WL 3003352, at *2 (7th Cir. May 24, 2016) (holding that an offense under Illinois law that requires "knowingly . . . caus[ing] bodily harm" is a crime of violence under the force clause); *De Leon Castellanos v. Holder*, 652 F.3d 762, 764–65 (7th Cir. 2011) (same); *United States v. Rodriguez-Gomez*, 608 F.3d 969, 973–74 (7th Cir. 2010) (same); *LaGuerre v. Mukasey*, 526 F.3d 1037, 1039 (7th Cir. 2008) (same); *cf. Flores v. Ashcroft*, 350 F.3d 666, 671–72 (7th Cir. 2003) (distinguishing between an intentional touching that results in bodily injury, however slight, which does not have as an element the use of force, and intentionally causing bodily injury, which does). Since voluntary manslaughter plainly requires intentionally causing bodily harm—namely, death—it has as an element the use of force and thus qualifies as a crime of violence.

Mr. Garcia argues in response that manslaughter can be committed by less forceful means, such as poisoning. However, even poisoning encompasses the use of physical force. The Supreme Court held in *Johnson v. United States*, 559 U.S. 133, 140 (2010) that "physical force" means "force capable of causing physical pain or injury to another person." Poison capable of causing death (which would be required to commit manslaughter) is by definition capable of causing physical pain of injury. Nor does physical force require physically striking another person, as Mr. Garcia suggests. The Supreme Court defines "physical" force as "force exerted by and through concrete bodies," as distinguished from "intellectual force or emotional force." *Johnson*, 559 U.S. at 138. Again, poison fits comfortably within that definition. In addition, the Supreme Court held in *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014) that "the act of

13

employing poison knowingly as a device to cause physical harm" constitutes a use of force even though "the harm occurs indirectly, rather than directly (as with a kick or punch)." *See also Castleman*, 134 S. Ct. at 1416–17 (Scalia, J., concurring) ("[I]t is impossible to cause bodily injury without using force 'capable of' producing that result."). The Seventh Circuit has also held on multiple occasions that intentionally causing bodily injury by poisoning would encompass the use of force. *Waters*, 2016 WL 3003352, at *3; *De Leon Castellanos*, 652 F.3d at 766–67.

The Sixth and Eighth Circuits have held on this logic that manslaughter offenses similar to the one here constitute crimes of violence under the force clause. In *United States v. Lambers*, 527 F. App'x 586, 587 (8th Cir. 2013), the Eighth Circuit held that Missouri's voluntary manslaughter statute—which proscribes the knowing killing of a person under the influence of sudden passion—"contains an element of using physical force against another person." Likewise, the Sixth Circuit in *United States v. Jackson*, No. 15-3982, 2016 WL 3619812 (6th Cir. July 1, 2016) held that voluntary manslaughter under Georgia law is a crime of violence. Under Georgia law, a person commits voluntary manslaughter when "'he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion . . . .'" *Id.* (quoting Ga. Code Ann. § 16-5-2(a)). The defendant there argued that this offense did not include an element of force because it could be committed by poisoning. The court rejected that argument, holding that "proof that a person caused the death of another human being under circumstances which would otherwise be murder necessarily requires proof that the individual used force capable of causing physical pain or injury." *Id.* (internal quotations and alterations omitted).

In arguing to the contrary, counsel cites exclusively to cases from outside the Seventh Circuit holding that intentionally causing bodily harm does not necessarily require the use of

force. *E.g.*, *United States v. Torres-Miguel*, 701 F.3d 165, 168–69 (4th Cir. 2012); *Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 (2d Cir. 2003). While those cases do support Mr. Garcia's position, counsel again fails to acknowledge the binding precedent from within this circuit that squarely forecloses this claim. To the extent Mr. Garcia wishes to preserve his argument for appeal, he has done so. But as discussed above, the Seventh Circuit has repeatedly rejected Mr. Garcia's argument, and the Court is bound to follow those holdings.[4] Moreover, after the briefing on this motion closed, the Seventh Circuit expressly acknowledged the cases on which Mr. Garcia relies and distinguished or disagreed with their holdings, so its position on this issue is crystal clear: an offense that requires intentionally causing bodily harm has as an element the use of force. *Waters*, 2016 WL 3003352, at *3.[5] Accordingly, the Court finds that Mr. Garcia's conviction for

---

[4] The Court is disappointed in counsel's failure to acknowledge this binding precedent, as is required of a member of the bar.

[5] The Seventh Circuit has reiterated that position in numerous orders denying leave to present this same argument in second or successive petitions under § 2255:

> Smith next argues that threatening injury does not necessarily mean threatening physical, violent force. He relies on cases from other circuits that conclude that statutes requiring an intent to cause bodily harm do not include an element of force. *See United States v. Torres-Miguel*, 701 F.3d 165, 168–71 (4th Cir. 2012) (willfully threatening to commit a crime that would result in death or great bodily injury); *Chrzanoski v. Ashcroft*, 327 F.3d 188, 193–97 (2d Cir. 2003) (intentionally causing physical injury to another person). But Smith ignores numerous decisions from this court, including one issued less than two months ago, disagreeing with the reasoning of the other circuits and explicitly holding that intentionally causing physical injury is forceful conduct for purposes of the Armed Career Criminal Act, career-offender guideline, and similar provisions with elements clauses. *See United States v. Waters*, No. 15-2728, 2016 WL 3003352, at *2–3 (7th Cir. May 24, 2016) (reaffirming that domestic battery in Illinois remains a crime of violence under the elements clause of the career-offender guideline); *Hill v. Werlinger*, 695 F.3d 644, 649–50 (7th Cir. 2012) (concluding that conviction for intentionally causing bodily harm on public property has an element of force); *De Leon Castellanos v. Holder*, 652 F.3d 762, 763 (7th Cir. 2011) (concluding that Illinois domestic battery is violent felony under elements clause of ACCA); *United States v. Rodriguez-Gomez*, 608 F.3d 969, 973–74 (7th Cir. 2010) (classifying crime of causing bodily harm to a police officer as crime of violence under elements clause of U.S.S.G. §

15

voluntary manslaughter is a crime of violence under the force clause, which is unaffected by *Johnson*. Therefore, his advisory sentencing range was properly calculated under the career offender guideline, so his sentence was not unlawful. For this additional reason, Mr. Garcia's motion must be denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008). A defendant is not required to

---

2L1.2(b)(1)(A)(ii)); *LaGuerre v. Mukasey*, 526 F.3d 1037, 1039 (7th Cir. 2008) (concluding that domestic battery is crime of violence under elements clause of 18 U.S.C. § 16(a)); *United States v. Upton*, 512 F.3d 394, 405 (7th Cir. 2008) (holding that felony convictions for domestic battery under § 5/12-3.2(a)(1) "clearly qualify" as "violent felon[ies]" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), because proving intentional causation of bodily harm "unambiguously requires proving physical force" (internal quotation marks omitted)). Just as a conviction for intentionally causing physical harm necessarily involves the *use* of force, an intentional threat to cause physical harm necessarily involves the *threat* of physical force.

*Smith v. United States*, No. 16-2652 (7th Cir. July 20, 2016); *see also, e.g.*, *Warren v. United States*, No. 16-2655 (July 21, 2016); *Broadway v. United States*, No. 16-2646 (July 20, 2016); *Thomas v. United States*, No. 16-2653 (July 18, 2016); *Seals v. United States*, No. 16-2617 (July 16, 2016); *Duncan v. United States*, No. 16-2611 (July 12, 2016).

show that he will ultimately succeed on appeal. *Miller-El v. Cockrell,* 537 U.S. 322, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

The Court respectfully declines to issue a certificate of appealability here. Mr. Garcia waived his right to file this petition, and he has presented no cognizable basis for excusing him from that waiver. In addition, binding Seventh Circuit precedent dictates that Mr. Garcia's conviction for voluntary manslaughter constitutes a crime of violence under the force clause, so *Johnson* has no effect here. On that basis, the Seventh Circuit has denied numerous petitions seeking authorization to present arguments identical to Mr. Garcia's in second or successive petitions under § 2255. Those orders are final and unreviewable, 28 U.S.C. § 2244(b)(3)(E), and prevent the defendants from even raising these arguments in the district courts or thereafter pursuing them on appeal, clearly indicating that the Seventh Circuit does not view these arguments as adequate to deserve encouragement to proceed further. And because both the appeal waiver and the force clause foreclose Mr. Garcia's claim, the separate issues under consideration by the Supreme Court are not dispositive, and so do not warrant a certificate of appealability, either.

The Court advises Mr. Garcia that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Mr. Garcia that Rule 4(a) of the Federal Rules of Appellate Procedure governs the time to appeal an order entered under the rules governing § 2255 proceedings. *See* Rule 11(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Under Rule 4(a), when the United States is a party in a civil case, any notice of appeal may be filed by any party within 60 days after the

judgment or order appealed from is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Mr. Garcia's motion to stay. [DE 101]. The Court also DENIES Mr. Garcia's motion to vacate his sentence under § 2255, [DE 77, 89], and DENIES the issuance of a certificate of appealability. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: July 25, 2016

                                              /s/ JON E. DEGUILIO
Judge
United States District Court